resent the plaintiff's method of teaching and style as illiterate, uncultivated, coarse, and vulgar, and his ideas as sensational, absurd, and foolish. They also represent him as egotistical and conceited in the extreme, and convey the impression that he makes himself ridiculous both in his method of instruction and by his public lectures. They also ridicule his private life, by charging that he was unable to select a name for his baby until after a year of solemn deliberation. In short, they, in effect, represent him as a presumptuous literary freak. If these representations concerning his personal characteristics, his ideas of the standard authors of English prose and poetry, and his literary style and method of teaching, are true, it necessarily follows that he is unfit, for lack of dignity and learning, to hold a position as instructor in English literature in any college or university. If the defendant was at liberty to publish these articles, then every newspaper in the United States and elsewhere enjoyed a like privilege, in the absence of statutory prohibition. It needs no argument, I think, to show that, if the press generally persisted in publishing articles of this character concerning the plaintiff, his ability to earn a livelihood in his chosen profession would be seriously jeopardized or impaired, if not destroyed. The good of the university might require those in authority to dispense with his services, as the only means of holding its patrons. Those who believe the publications will hold the plaintiff in contempt for thus presuming to crticise the universally accepted poets and authors, and for promulgating such ideas as a teacher of English in a university, and to those to whom he is known he will become the butt of ridicule. Presumably, he is qualified to hold the position, or the university would not have retained his services so long; and his qualifications, being alleged, are admitted by the demurrer. If, as claimed by counsel for the appellant, these articles were written in a spirit of fun and friendship, the writer did not display ability of as high an order in determining that they would not be injurious to the plaintiff as he shows literary merit in the composition. I am of opinion that these publications overstep the just bounds of freedom of the press, and that the publication of such comments and criticisms with immunity is not required by any rule of public policy. The defendant, if it cannot justify, should be compelled to make restitution by way of damages in such an amount as a jury, in the exercise of sound discretion, under proper instructions from the court, may award. It should not be permitted to afford its writers and readers fun and amusement of this nature at the expense of the plaintiff.

I regard the articles as plainly libelous per se, and am of opinion that the interlocutory judgment should be affirmed, with costs.

---

GLOBE & RUTGERS FIRE INS. CO. v. ROBBINS & MYERS CO.

(Supreme Court, Appellate Term. February 4, 1904.)

1. INSURANCE—PREMIUMS—PAYMENT TO AGENT—AUTHORITY OF AGENT—EVIDENCE—SUFFICIENCY.

In an action to recover the premium on a policy of insurance, where the defense was payment to an agent, evidence that such agent acted as broker in effecting insurance written by plaintiff in a great number of

instances, and that in each instance plaintiff received through the agent the amount of the premium, less his commissions, or, where the premium was received in full, had paid the commissions to the agent, and that the agent had previously done business with the local broker at defendant's residence, on behalf of plaintiff, and that no demand was made on defendant for the premium until November, the policy having been issued in the previous June, showed not only such apparent authority as would have justified defendant in paying the agent the premium, but that actual authority existed in the agent to receive the premium on plaintiff's behalf.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by the Globe & Rutgers Fire Insurance Company against the Robbins & Myers Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and GREENBAUM, JJ.

Henry Melville, for appellant.
Philip Lindsley, for respondent.

GREENBAUM, J. The action was brought to recover the premium upon a policy of insurance issued by the plaintiff to the defendant on the 5th day of June, 1902, for one year. The defense was payment of the premium to one Carroll, the broker by whom the application for the policy had been made, and to whom the plaintiff had delivered the policy, and who, in turn, delivered it to the defendant's broker, in Ohio, where defendant then resided. After receipt of the premium by Carroll, less the commission deducted by the defendant's resident broker, Carroll absconded without making payment of said premium to plaintiff.

Upon the trial it was proved, without contradiction, that Carroll acted as broker in effecting insurance written by the plaintiff company in a great number of instances, and in each instance the plaintiff received through Carroll the amount of the premium, less his commissions, or, where the premium was received in full, had paid the commissions to Carroll. It also appeared from the deposition of Mr. Elliott, the Ohio broker, that Carroll, the defaulting broker, had previously on other occasions done business with him on behalf of the plaintiff. Upon these facts, the justice below rendered a judgment in favor of the plaintiff; proceeding evidently upon the theory that Carroll was the agent of the defendant, and that payment by the defendant to him did not discharge its obligation to the plaintiff. If credit was extended to any one, plaintiff extended such credit to Carroll. No demand was made upon the defendant for the premium until some time in November, 1902. Under these circumstances, not only did the plaintiff vest Carroll with such apparent authority as would have justified the defendant in paying him the premium, but the only inference properly deducible from the undisputed facts is that actual authority existed in Carroll to receive such premium on the plaintiff's behalf. The case is distinguishable from Citizens' Fire Insurance Company v. Swartz, 21 Misc. Rep. 671, 47 N. Y. Supp. 1107, in that it failed to appear in that case that the absconding broker had ever had any other transaction with the insurance company than the one in-

volved in the suit, or that it had paid or promised to pay him any commission, or had any acquaintance with him, further than that arising from the negotiations concerning the one policy there involved. On the other hand, the case is more analogous to that of Greenwich Insurance Company v. Union Dredging Company, 14 Daly, 237, in which, in spite of a provision in the policy to the effect that, if the premium be paid to any person or persons other than the duly appointed and authorized agent of the company, such payment shall be at the sole risk of the assured, a broker to whom the defendant had paid the premium was held the agent of the plaintiff upon its being made to appear that the plaintiff kept a regular account with the broker, and that it extended credit to the broker, as evidenced by the giving of the policies to him for delivery.

We think that the justice erred in awarding judgment for the plaintiff. Judgment reversed and new trial ordered, with costs to the appellant to abide the event. All concur.